People *ex rel.* Negus agt. Dyer.

---

## SUPREME COURT.

### THE PEOPLE *ex rel.* JOHN NEGUS agt. WILLIAM DYER.

*Brooklyn Elevated Railway — power of court to prevent (by injunction) the board of aldermen from passing over the mayor's veto a resolution changing the route of such railway — the board of aldermen amenable to an injunction order in an action against the city.*

A charter was made by the legislature of the state for the construction of an elevated railway on designated streets in the city of Brooklyn, or on such streets and avenues as should be named by the mayor and common council of the city of Brooklyn, as being more suitable for carrying out the objects contemplated in the erection of the railway. The aldermen made and adopted a resolution, marking out and naming certain

streets and avenues on which the superstructure might be placed. Such resolution was vetoed by the mayor. In an action in the supreme court against the city of Brooklyn and the Brooklyn Elevated Railway Company, to restrain the common council from any action to override the mayor's veto, a preliminary injunction was obtained from the county judge of Kings county, enjoining the common council from voting and doing any act to override the veto. The common council voted on the resolution and passed it notwithstanding the veto and injunction, and were all attached for contempt therefor. On appeal from the order imposing punishment for the contempt:

*Held,* that the board of aldermen in this case, are amenable to an injunction order in an action against the city.

*Held,* also, that the injunction order though signed by a county judge, was, until reversed, a lawful mandate of the court, and their violation of it was a contempt for which they should be punished.

*Second Department, General Term, May,* 1882.

*Before* BARNARD, DYKMAN *and* CULLEN, *JJ.*

THE facts are sufficiently stated in the opinions (*See, also, Negus* agt. *City of Brooklyn,* 62 *How.,* 291).

*E. Cooke, T. C. Cronin, D. Barrett* and *H. G. Hull,* for the people, respondents.

*Winchester Britton,* for appellants.

DYKMAN, *J.*— This procedure is instituted for the punishment of the defendant and others for a criminal contempt manifested by disobedience to an injunction order.

The questions for determination come in this wise : A charter was made by the legislature of the state for the construction of an elevated railway on designated streets in the city of Brooklyn, or on such streets and avenues as should be named by the mayor and common council of the city of Brooklyn, as being more suitable for carrying out the objects contemplated in the erection of the railway.

On the 6th day of December, 1881, in regular session, the aldermen made and adopted a resolution, marking out and naming certain streets and avenues on which the superstruc-

People *ex rel.* Negus agt. Dyer.

ture might be placed. Such resolution was, in the orderly course of municipal proceedings, forwarded to the mayor of the city for approval, and returned by him with his disapprobation, accompanied by a veto message. Thereupon an action was commenced in the supreme court against the city of Brooklyn and the Brooklyn Elevated Railway Company for the purpose of restraining the common council from any action to override the veto of the mayor. In this action a preliminary injunction was obtained from the county judge of Kings county, enjoining the common council and its members from voting or doing any act to override or disapprove the mayor's veto. The papers in the action, with this injunction order, were served on the mayor and each of the aldermen of the city. On the 27th day of December, 1881, the common council voted on the resolution and passed it, notwithstanding the veto and the injunction. The defendant and sixteen other aldermen voted in favor of the resolution, and were all attached for contempt therefor. The contempt was found against them and punishment was imposed, and from that judgment we have this appeal.

It is attempted to excuse the conduct of the defendant and his companions in defiance of the injunction order by the theory that the delegation of power by the legislature to the mayor and common council constituted them agents of the state, and not of the city. That the acts of the appellants were neither municipal nor aldermanic, and as they were not made parties to the injunction suit they cannot be affected by orders made therein. There would be force in the claim if the city had no interest in the performance of the duties imposed on the common council, and could derive no benefit from right action of that body, and no injury from his misfeasance, and no connection existed between the powers so bestowed and their duties as agents of the city; but it is not so. The power is laid on the common council, a body composed of the aldermen of the city, and invested with the legislative power of the corporation, so that the depository of the

power is the legislative body of the city of Brooklyn, and it has no other function. The power conferred on the common council is granted to the corporation. The exercise of its office under the law is in direct alignment with its duties as an agent of the corporation; nay, more, the public have a direct interest in the exercise of the functions imparted to this body, as they have relations to the public streets of the city. The city will have corporate injury or benefit as the duties are performed ill or well. The duties relate to the exercise of corporate power possessed over the public streets.

These considerations give clear indication that the appellants, under the law alluded to, acted as the servants and agents of the corporation, and that the maxim *respondeat superior* would have application between them.

Beside all this, the veto of the mayor could be nullified and superseded only by the board of aldermen.

State agents with power to locate a railway have no such prerogative. The charter of this city is, that if the mayor returns an ordinance with objections, the board shall proceed to reconsider the same, and if two-thirds of all the members elected shall then agree to pass the same it shall take effect as a law. Here, then, the act is one which only aldermen in board assembled could perform, and precisely that was forbidden by the injunction order.

It follows, therefore, that the aldermen cannot obtain exculpation on this plea. As they acted as aldermen they are amenable to an injunction order in an action against the city.

Another objection is, that the injunction order was not the lawful mandate of the court, because it was signed by a county judge. The Code is that an injunction order may be granted by the court in which the action is brought, or by a judge thereof, or by a county judge, and where it is granted by a judge it may be enforced as the order of the court. The county judge had power, therefore, to sit in judgment on the facts presented to him, and the complaint which is verified, and the affidavits accompanying the same, brought to him a

People *ex rel.* Negus agt. Dyer.

case justifying the interposition of the court, in restraint of the anticipated action of the aldermen. This gave him jurisdiction, and his determination was not void, even though on appeal it might have been held improvident or irregular. As it stood unreversed it was a lawful mandate. On the merits there is no defense. The restraining order, with all the papers on which it was founded, was served personally on the aldermen, and they proceeded to its violation with deliberate intent. The act of disobedience is without a circumstance of palliation. They well knew the action interdicted by the order, and yet they performed it in disregard of its command, without any claim at that time of illegality or invalidity. The contempt seems to have been perpetrated with headstrong intention and premeditated design. We find no avenue of escape for the appellants.

The process of the court must be vindicated, and for that purpose the punishment awarded is neither inordinate or disproportionate, and no part of it should be interscinded.

The order should be affirmed, with costs and disbursements.

BARNARD, J., concurs.

CULLEN, J. — I concur in the affirmance appealed from, on the ground that the appellants assumed to act with reference to the subject-matter of the injunction in the capacity of corporate agents. The act for the commission of which they are punished had all the form and characteristics of a corporate act. I do not think the appellants are relieved from contempt, even if it be held that they erred in the conception of the duty imposed upon them by the legislature in regard to this railroad. It is conceded that the injunction forbade the action, as city agents, in regard to the application. If hereafter they did attempt to act as city agents, it is no answer to the charge of contempt to say that the appellants, to have given legal effect to their action, should have acted in a different capacity, and that in such capacity the injunction would not have bound them. The question is not how they might

have acted, but in what capacity they did act. Therefore the test is, was the act of the appellants had in such form and manner that, had a corporate act been necessary to give effect to their resolution, their action would have been valid? Undoubtedly it was such.

Judged by this test, I think the defendants violated the injunction.